FILED by _____ D.C.
ELECTRONIC

**AUG. 28, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
## 09-61353-Civ-DIMITROULEAS/SNOW

MARLENE DIJOLS, individually and on
behalf of all others similarly situated,

        Plaintiff,     No.

  v.

WHIRLPOOL CORPORATION and
MAYTAG CORPORATION,

        Defendants.

### CLASS ACTION COMPLAINT

  Plaintiff, Marlene Dijols, individually and on behalf of all others similarly situated, alleges as follows:

### INTRODUCTION

  1.  Plaintiff brings this class action individually and on behalf of a Class/Classes defined below (collectively, the "Class"), against Whirlpool Corporation ("Whirlpool") and Maytag Corporation ("Maytag") (collectively "Defendant"), to obtain relief, including, among other things, damages and injunctive relief.

  2.  This action is brought to remedy violations of law in connection with Defendant's design, manufacture, marketing, advertising, selling, warranting, and servicing of its Front-Loading Automatic Washers (the "Washing Machines" or "Machines"). These Washing Machines have serious design defects (collectively "Design Defects") that cause them to: (a) accumulate mold and mildew and/or residue or growth within the Washing Machines, (b) produce a moldy or mildewy odor that permeates the Washing Machines and/or consumers' homes, (c) produce a mold or mildew odor on

clothes and other items washed in the Machines, (d) fail to clean the Machines and remove moisture, residue, growth and/or bacteria that lead to the formation of mold, mildew and/or associated foul odors; and (e) be unusable in the manner, to the extent to, and for the purpose for which the Washing Machines were advertised, marketed, and sold. The problems caused by the Design Defects are collectively referred to as "Mold Problems."

3.     Plaintiff asserts claims for violations of consumer protection statutes, breach of implied and express warranty and unjust enrichment.

## THE PARTIES

### PLAINTIFF

4.     Plaintiff Marlene Dijols is and at all relevant times has been a resident and citizen of Florida.

5.     As set forth below, Plaintiff purchased a Washing Machine for household purposes, and at all pertinent times used the Machine for its intended purpose with the use of the recommended high-efficiency ("HE") detergent, and has been experiencing Mold Problems in the Machine and on items washed in the Machine.

### WHIRLPOOL and MAYTAG

6.     Whirlpool is a Delaware corporation and maintains its principal place of business at 2000 M-63 N, Benton Harbor, Michigan 49022.

7.     Maytag is a Delaware corporation and maintains its principal place of business at 2000 M-63 N, Benton Harbor, Michigan 49022. Maytag is owned and operated by Whirlpool.

2

**JURISDICTION AND VENUE**

8.      This Court has subject matter jurisdiction under 28 U.S.C. §1332(d)(2) because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and this is a class action in which the Class members and Defendant are citizens of different states.

9.      Venue is proper in this judicial district under 28 U.S.C. §1391, because Defendant does business throughout this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.  At all pertinent times, Defendant was and is in the business of marketing, advertising, distributing and selling products, including the Washing Machines, throughout the proposed class states, and nationwide, by and through various authorized dealers.  The Washing Machines that form the basis of this Complaint were purchased from Defendant and/or from Defendant's authorized dealers and placed in the stream of commerce by Defendant.

10.     Plaintiff believes that the instant action is legally and factually related to a pending multi-district litigation against Whirlpool Corporation, MDL 2001, and may petition the United States Judicial Panel on Multidistrict Litigation to transfer this action to the MDL Court.

## FACTUAL BACKGROUND

**Facts Common To The Class**

11.     Defendant holds itself out to the public as a manufacturer of safe, cutting-edge, and easy-to-use home appliances, including washing machines.  Defendant is in the business of manufacturing, producing, distributing, and/or selling washing machines throughout the United States.

3

12.    Defendant manufactured, produced, and/or distributed front-loading Washing Machines for sale by its network of authorized dealers including several leading retailers in the United States, such as Lowe's, Sears, Best Buy, and other large retail chains.

13.    Defendant provided Plaintiff and each purchaser of the subject Washing Machines with an express one-year factory warranty as follows:

> For one [1] year from the original retail purchase date, any part which fails in normal home use will be repaired free of charge.

Defendant has these same obligations with respect to Plaintiff and all Class members, but has failed to satisfy these obligations.

14.    The anticipated useful life of the Machines is for many years in excess of the one year warranty.

15.    In conjunction with each sale, Defendant marketed, advertised, and warranted that the defective Washing Machines were of merchantable quality fit for the ordinary purpose for which such goods were used and were free from defects, or at a minimum would not cause Mold Problems.

16.    Further, as the Mold Problems became undeniable, Defendant began recommending that Machine owners run three successive washer cleaning cycles with an Affresh™[1] tablet in each cycle to ameliorate Mold Problems. Affresh is a product designed, manufactured, and marketed by Defendant specifically to address Mold Problems in Washing Machines. Upon information and belief, the ratings (Modified

---

[1] Whirlpool Corporation markets Affresh to all Maytag frontload washing machine owners without distinction to year, model or manufacturing facility which may vary among different machines. Affresh is designed to target buildup that causes odor without regard to engineering differences which may vary among the different machines.

4

Energy Factor) provided by Defendant to the government entities are not taking into account the extra loads run through the Machines to try to clean the Machines.

17.    Defendant provides care instructions within the "Use & Care Guides" provided after the purchase and installation of the Washing Machines.  None of the Use & Care Guides make any disclosure about any risk of Mold Problems when the recommended HE detergent is used as instructed.  Defendant fails to inform consumers, through the Use & Care Guides or any other written disclosure, that even when consumers operate the Washing Machines as instructed by Defendant, Mold Problems will occur with virtually every machine, and that they will result regardless of washer maintenance, due to defects in the design of the Washing Machines.

18.    Plaintiff used the recommended HE detergent.  Plaintiff also cleaned the machine as recommended.  Other Use & Care Guides suggest that Washing Machine owners leave the washer door open between uses to ameliorate "Washer odor."   That suggestion poses obvious safety risks to children and pets; indeed, a young child recently drowned in a Kenmore front-loading washing machine manufactured by Defendant, causing the U.S. Consumer Product Safety Commission to open an investigation regarding safety standards for front loaders.  Despite following Defendant's sometimes risky instructions, Plaintiff all still experienced Mold Problems with their Washing Machines.

19.    Each Washing Machine has a separate compartment/dispenser with a "fill line" for the recommended amount of liquid and/or powder HE detergent.  Similarly, each Washing Machine has a separate compartment/dispenser with a "fill line" for the recommended amount of liquid fabric softener.

5

20.    Plaintiff and Class members experienced, and continue to experience, Mold Problems even though they followed the instructions and recommendations by Defendant in its Use & Care Guide and elsewhere.

21.    Defendant concealed material facts regarding the Washing Machines, including serious design defects, which cause the Washing Machines to (a) accumulate mold and mildew residue or growth within the Washing Machines, (b) produce a moldy or mildewy odor that permeates consumers' Machines and homes, (c) produce a mold or mildew odor on clothes washed in the Machines, and (d) be unusable in the manner, to the extent to, and for the purpose for which the Washing Machines were advertised, marketed, and sold, even though consumers used the Washing Machine as instructed by Defendant, including using HE detergent and fabric softener in the amounts instructed by Defendant.

22.    The Washing Machines are defective in many respects. Due to those defects, the use of the Washing Machine—as instructed by Defendant—results in conditions creating an excessive propensity for the Washing Machines to accumulate mold and mildew, residue or growth and moldy odors. These defects include, among other things, (a) the failure of the Washing Machines to properly drain water and to avoid lingering moisture; (b) the failure of the Washing Machines to sufficiently rinse away HE detergent and liquid fabric softener to prevent the accumulation of residues that contribute to the formation of mold and mildew and moldy odors; (c) the failure of the Washing Machines to prevent the accumulation of residues and growths that contribute to the formation of mold and mildew and moldy odors when products such as HE detergent and liquid fabric softener are used in the amounts instructed and recommended by Defendant;

6

(d) the failure of the Washing Machines to have dispenser compartments that contain proper fill lines for HE detergent and liquid fabric softener to prevent the accumulation of residues that contribute to the formation of mold and mildew and moldy odors; and (e) the failure of the Washing Machines to clean themselves in a manner necessary for the proper functioning of the Machine for the purpose for which it was intended.

23.    Upon information and belief, the defects in the stainless steel drums, which come with a lifetime warranty, also play a role in causing the Mold Problems. Due to the defects in the drums, *inter alia*, the Machines do not fully or properly drain in connection with each and every wash cycle and/or do not sufficiently permit the rinsing away and/or prevent the accumulation of residues and growths. As a result, the defects in the drums do not permit the Machines to clean themselves after each load. Defects in the door seal ("boot") also play a role in the accumulation of mold, mildew and/or foul odors. Among other things, the door seal does not fully or properly drain and/or remove residues and growths after each wash.

24.    Defendant knew and was aware, or should have known and been aware, before marketing and selling the Washing Machines, that they were inherently defective because even when operated as instructed, the Machines were substantially likely to experience Mold Problems. Defendant nonetheless failed to warn its customers of the Design Defects inherent in the Washing Machines or the Mold Problems which would result from the alleged defects.

25.    Defendant's knowledge of the problem also arises from, among other things, the case of *Mink v. Maytag Corp.*, No. 03 L 47, 20th Judicial Circuit, St. Clair County, Illinois. The allegations against Defendant included odor, mold and mildew in

7

its front-load washing machines. The class action settlement in that case covered all machines purchased before August 9, 2004. As a result, Defendant knew and was aware, or should have known and been aware, before marketing and selling the Washing Machines after that settlement, that they were inherently defective because even when operated as instructed.

26. As a result of the Design Defects that have plagued and continue to plague the Washing Machines, Plaintiff and the other Class members overpaid for the Machines. For the reasons detailed herein, moreover, Defendant knew or should have known that the value of the Washing Machines it was selling to consumers was significantly inflated by its misrepresentations and misleading information concerning those Machines. If Plaintiff and the other Class members had known about the design defects affecting the Washing Machines, they would not have paid the significant sums that they paid for the Machines.

27. As a result of the mold or mildew odor that permeates items "washed" in the Machines, many consumers have been forced to re-wash or even replace clothes, towels and other items that have been ruined by the Design Defects in these Washing Machines.

28. Defendant has profited, either directly or indirectly, by concealing the nature of the Design Defects and misrepresenting the cause of the Mold Problems associated with the defects, which have enabled it (a) to sell the Washing Machines at premium prices, (b) to profit on repair services purportedly to fix the Mold Problems, (c) and to sell Defendant Washing Machine-related products such as Affresh (from which

8

Defendant earns a profit). In truth and in fact, Defendant has no effective remedy for the Design Defects and Mold Problems and has taken no action to correct the defects.

29. As a result of Defendant's false and misleading statements and concealment of material facts, and Defendant's other misconduct described in this Complaint, Plaintiff and the Class bought thousands of the Washing Machines and have suffered—and continue to suffer—injury as a result of the defective nature of these Washing Machines and as a result of Defendant's misconduct.

30. Far from being an innocuous or isolated defect or problem, in addition to Plaintiff, thousands of other Washing Machine purchasers have complained directly (and indirectly) to Defendant and its authorized dealers and service personnel, and on Internet web sites about the Design Defects and Mold Problems with the Machines.

31. Indeed, the Internet is replete with references and complaints regarding the Washing Machines that mirror allegations in this Complaint. *See, e.g.*,

http://www99.epinions.com/reviews/Maytag_Neptune_Washer_MAH6500AWQ_Washing_Machines

http://shopping.yahoo.com/p:Maytag%20MFW9700SQ:2003014922;_ylt=ApLVQ46bbresWY9lsm6bMMx4TRoF

32. As a result of the avalanche of consumer complaints regarding the defects that Defendant would not and/or could not remedy, several entrepreneurs created and marketed products designed to treat, eliminate and/or minimize the Mold Problems caused by the Design Defects in the Washing Machines. These products include SmellyWasher and NuFreshNow. Due to the widespread and intractable nature of the Mold Problems, these entrepreneurs have sold tens of thousands, if not hundreds of thousands, of units of their products to consumers. As further evidence of the serious

nature of these problems, Proctor & Gamble created a new product called Tide Washing Machine Cleaner in an attempt to address these intractable Mold Problems.

33.     Reflecting its knowledge that the Design Defects resulted in serious Mold Problems in its Washing Machines, Defendant developed a product called Affresh™ to try and address these serious problems. As part of its marketing program for Affresh™, in September 2007, Defendant finally disseminated information about the "potential" for buildup of "mold and mildew stains" in the washers and offered for sale Affresh™ tablets as an alleged solution to the problems. On the packaging for this product, Defendant represented that Affresh "[r]emoves odor-causing residue in HE Washers[,]" and "[u]sed once a month, it keeps your machine fresh and clean by removing the odor-causing residue that can build up in all HE Washers." Defendant admits that its Washing Machines up to 1 year in age should be cleaned once a month with Affresh™ cleaner to prevent odor-causing residue from accumulating. Despite this, Defendant's Affresh™ failed to prevent and/or fix Mold Problems experienced by Plaintiff and other class members.

34.     Due to the ineffectiveness of Affresh™, Defendant modified Affresh™ and created and marketed an Affresh™ Washing Cleaner Kit that included Power Puck™ tablets and Grit Grabber™ cloths. Defendant uniformly represents that its Washing Machines "older than 1 year require special attention, particularly if odor has set in," and that the Grit Grabber cloths were designed to "help remove the residue and odor you can't reach with Power Puck Tablets." Despite this, Defendant's Affresh™ Washing Cleaner Kit also fails to prevent and/or fix the Mold Problems experienced by Plaintiff and other class members.

10

35.    Nonetheless, Defendant unjustly enriched itself through the sale of its Affresh™ products, while failing to remedy the defect.

36.    The Washing Machines purchased by Plaintiff and Class members failed to work due to a defect in design (which failure to work did not result from the ordinary course of usage by Plaintiff or Class members).

37.    Defendant internally admits that newer front-loading high efficiency Machines are more prone than older top-loading washers to build up residue that lead to odors.  Despite this knowledge, Defendant failed to take the necessary steps to adequately design and/or test the Washing Machines to ensure that they were free from the Design Defects complained of herein.   Instead, Defendant sold and continues to sell these Washing Machines even though it knew, or was reckless in not knowing, that they (a) contained inherent material defects; (b) were not of merchantable quality; and (c) would result in the formation of mold, mildew, residue or growth and moldy/mildewy and other foul odors, even when used as instructed.

38.    Despite having repeated notice of the above-described Design Defects in its Washing Machines and despite the reasonable expectations of consumers created by Defendant's marketing of its Washing Machines, Defendant has engaged in the following routine, albeit wrongful course of conduct, where Defendant:

    a.    Designed, manufactured and sold Washing Machines with Design Defects that cause Mold Problems;

    b.    Failed to disclose that the Washing Machines had Design Defects that cause Mold Problems;

    c.    Continued to represent expressly or by implication that the Washing Machines that Plaintiff and Class Members purchased were dependable, cost effective, and would provide outstanding

11

cleaning and performance as washing machines when it knew that these statements were false;

d.    Continued to manufacture, market, advertise, distribute, and sell the Washing Machines to consumers when it knew or should have known the Washing Machines were not dependable and would not withstand normal operation;

e.    Failed to disclose to consumers the substantial risk of Washing Machine failure and the material defects in the Washing Machines;

f.    Failed to disclose the nature of the defects to consumers;

g.    Failed to disclose the many complaints it received from consumers (or the high incidence of attempted but futile repairs of the Washing Machines);

h.    Failed to implement a recall to adequately announce, remedy, and correct the defects for consumers;

i.    Failed to disclose to consumers that Defendant was not committed to making effective repairs under its warranties to address Mold Problems;

j.    Failed to take action to correct its omissions or false or misleading implied or express representations about the use, efficacy, qualities, and benefits of its Washing Machines; and

k.    Failed to disclose that despite following the recommended procedures within the Defendant Use & Care Guide, consumers would still experience Mold Problems.

39.    By engaging in the foregoing course of conduct, Defendant has caused consumers—including Plaintiff and Class Members—to be aggrieved and suffer ascertainable losses, in that, among others things, Defendant's course of conduct systematically:

a.    Caused Plaintiff and the Class members to pay premium prices for a defective product;

b.    Reduced the value of the Washing Machines purchased by Plaintiff and Class members; and

12

      c.      Caused reasonable consumers like Plaintiff and Class members to spend money for attempted repairs and other purported remedies of the defects in their Machines that they would not have spent but for Defendant's common course of conduct.

40.     To this day, Defendant continues to conceal material information from users, consumers, and the public, that (a) the Machines are inherently defective; and (b) the Machines are not of merchantable quality.

41.     All jurisdictional prerequisites and conditions precedent have been and/or are hereby satisfied by and through the filing and service of this Complaint (and the similar complaints previously filed and transferred to this Multidistrict Litigation). Moreover, in light of the thousands of complaints consumers have made directly to Defendant, Defendant's authorized dealers, and manufacturers of products that attempt to remediate the Mold Problems, and complaints posted on the internet and other forums, and Defendant's refusal to effectively resolve the Mold Problems, any additional pre-suit complaints or other notice to Defendant would have been futile.

**Plaintiff Marlene Dijols's Experiences with Her Washing Machine**

42.     Plaintiff Marlene Dijols bought a new Maytag front-loading washing machine (model number MAH55FLBWQ) from a Home Depot store in Florida in November 2004. Shortly after the first year of purchase, Plaintiff began to notice a smell in her clothes and called Maytag. Maytag told Plaintiff that she was out of warranty and failed to repair or replace her washing machine. Not until the past few months did Plaintiff understand that her problem with smelling clothes was a problem caused by the Machine. Plaintiff complained to Maytag about the smell and Defendant advanced numerous suggestions, which did not work in any material way.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action on behalf of herself and all other persons similarly situated, under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

44.     The Class/Classes that Plaintiff seeks to represent are defined as follows:

> All persons who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in Florida, California, Illinois, New Jersey, New York and/or Ohio.[2]

Excluded from the Classes are Defendant, its affiliates, employees, officers and directors, persons or entities that distribute or sell the Washing Machines, the Judge(s) assigned to this case, and the attorneys of record in this case. Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal that any of the Classes should be expanded or otherwise modified.

45.     **Numerosity/Impracticability of Joinder**:  The members of the Classes are so numerous that joinder of all members would be impracticable.  The proposed Classes each include thousands of members.  The precise numbers of members can be ascertained through discovery, which will include Defendant's sales, warranty service, and other records.

46.     **Commonality and Predominance**:  There are common questions of law and fact that predominate over any questions affecting only individual members of each Class.  These common legal and factual questions, include, but are not limited to the following:

> (a)     Whether the Washing Machines are materially defective— and what are the defects;

---

[2]     In the alternative, Plaintiff seeks to certify a Florida-only class.

14

(b)     Whether Defendant knew that the Washing Machines were and are materially defective;

(c)     Whether Defendant omitted and concealed material facts from its communications and disclosures to Plaintiff and the Classes regarding the defects inherent in the Washing Machines;

(d)     Whether Defendant has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in connection with the sale of the Machines;

(e)     Whether Defendant violated the consumer protection statutes applicable to each Class;

(f)     Whether Defendant breached its warranty and/or extended warranties;

(g)     Whether Defendant breached its implied warranties;

(h)     Whether Defendant has been unjustly enriched;

(i)     Whether, as a result of Defendant's conduct, Plaintiff and the Classes have suffered damages; and if so, the appropriate amount thereof; and

(j)     Whether, as a result of Defendant's misconduct, Plaintiff and the Classes are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

47.     **Typicality**: The representative Plaintiff's claims are typical of the claims of the members of the Classes. Plaintiff and all Class members have been injured by the same wrongful practices of Defendant. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

48.     **Adequacy**: Plaintiff will fully and adequately assert and protect the interests of the Classes, and have retained class counsel who are experienced and

15

qualified in prosecuting class actions. Neither Plaintiff nor her attorneys have any interests contrary to or conflicting with the Classes.

49.    **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are likely in the millions of dollars, the individual damages incurred by each Class member are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Further, individual members of the Classes do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also result in varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and the court system because of multiple trials of the same factual and legal issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. In addition, Defendant has acted or refused to act on grounds generally applicable to the Classes and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

50.    Plaintiff does not anticipate any difficulty in the management of this litigation.

51.    Defendant has, or has access to, address information for the Class members, which may be used for the purpose of providing notice of the pendency of this action.

**FIRST CAUSE OF ACTION**
**(Violation of Florida's Deceptive and Unfair Trade Practices Act,**
**F.S.A., 501.201 _et seq._ ("FDUTPA"))[3]**

52.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

53.    At all relevant times, Plaintiff and all members of the Class were consumers within the meaning of FDUTPA.

54.    At all relevant times hereto, Defendant engaged in trade and/or commerce within the meaning of FDUTPA.

55.    The practices of Defendant violate FDUTPA for, among other things, one or more of the following reasons:

    a.    Defendant omitted and concealed material facts from its communications and disclosures to Plaintiff and all members of the Class regarding the defect inherent in the Washing Machines;

    b.    Defendant continued to market and sell an inherently defective product, when it knew it was defective and not fit for the product's ordinary uses; and

    c.    Defendant expressly or implicitly represented its product as merchantable, when such was not the case.

---

[3]    The consumer protection claims of Plaintiff and resident absent class members are brought under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 _et seq._ The consumer protection claims of nonresident absent class members are brought under the consumer protection statute(s) of their respective states of residence. _See e.g._, Cal. Bus. & Prof. Code § 17200 _et seq._, and Cal. Bus. & Prof. Code § 17500 _et seq._ (California); 815 ILCS 505/1 _et seq._ (Illinois); N.J. Rev. Stat. § 56:8-1 _et seq._, N.J. Rev. Stat. § 56:12-1 _et seq._ (New Jersey); N.Y. Gen. Bus. Law. § 349 _et seq._ (New York); and Ohio Rev. Code Ann. § 1345.01 _et seq._ (Ohio).

56.    By the conduct described herein, Defendant has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce.

57.    The representations and omissions by Defendant were material and likely to deceive reasonable consumers.

58.    Moreover, based on the foregoing allegations, Defendant has committed acts or practices in trade or commerce which offend established public policy and are unethical, oppressive, unscrupulous or substantially injurious to consumers; or Defendant has committed acts or practices which have caused or are likely to cause consumer injury, which is substantial, not outweighed by any countervailing benefits to consumers or competition that the practice produces, and an injury that consumers themselves could not reasonably have avoided. Therefore, Defendant has engaged in unfair acts or practices.

59.    As set forth above, consumers, including Plaintiff and the Class were and are aggrieved as a result of Defendant's unfair or deceptive acts or practices in violation of § 501.204(1), *Fla. Stat.*, and are thus entitled to declaratory and injunctive relief.

60.    Had Defendant disclosed all material information regarding the Washing Machines to Plaintiff and all Class members, they would not have purchased the Washing Machines.

61.    The foregoing acts and practices proximately caused Plaintiff and other members of the Class to suffer actual damages in the form of, among other things, monies spent to repair the Washing Machines and/or diminution in value of the Washing Machines, and are entitled to recover such damages, attorneys' fees, and costs of suit.

## SECOND CAUSE OF ACTION
### (Breach of Implied Warranty of Merchantability)

62.     Plaintiff hereby incorporates by reference the allegations contained in all paragraphs 1-51 of this Complaint as though set forth fully herein.

63.     This cause of action is brought on behalf of Plaintiff and the members of the Classes.

64.     Defendant is a merchant in the sale of the Washing Machines to Plaintiff and the members of the Classes and the Washing Machines are goods under applicable law.

65.     Plaintiff and members of the Classes are in privity with Defendant in that they purchased their Washing Machines directly from Defendant, or from an actual or apparent agent of Defendant such as Defendant's authorized dealers or by virtue of other documents conferred privity of this implied warranty to the Plaintiff and the class.

66.     Plaintiff and the members of the Classes are also in privity with Defendant by virtue of the contractual relationship stemming from Defendant's manufacturer's warranty provided in conjunction with the purchase of the Washing Machines, and which is enforceable by Plaintiff and the Classes as against Defendant regardless of where, or from whom, the Washing Machines were acquired.

67.     At all times relevant hereto, there was a duty imposed by law which requires that Defendant's Washing Machines be reasonably fit for the purposes for which washing machines are used, that they are of fair average quality within their description, and that they be acceptable in trade for their description.

68.     Defendant has not validly disclaimed, excluded, or modified the implied warranties and/or duties described herein, and/or any attempted disclaimer or exclusion of the same was and is ineffectual.

69.     Notwithstanding the aforementioned duty, at the time of delivery, the Washing Machines sold to Plaintiff and the Classes were not merchantable, and not fit for the ordinary purposes for which they were sold. The Washing Machines are not fit for the ordinary purpose of cleaning clothing and other articles, because, *inter alia*, the Washing Machines are defective in that they contain Design Defects that result in Mold Problems.

70.     As documented in its own business records and elsewhere, Defendant was notified that the Washing Machines were not merchantable within a reasonable amount of time after the latent defects manifested itself to Plaintiff and the Classes.

71.     As a direct result of the non-merchantability of the Washing Machines described herein, Plaintiff and other members of the Classes have sustained damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (Unjust Enrichment)

72.     Plaintiff hereby incorporates by reference the allegations contained in all paragraphs 1-51 of this Complaint as though set forth fully herein.

73.     This claim is asserted in the alternative on behalf of Plaintiff and the members of the Classes, to the extent that the warranties do not govern all of Plaintiff's and Class members' claims or there is any determination that Plaintiff does not have standing to assert any contractual claims asserted against Defendant on because of any alleged absence of contractual privity or otherwise.

20

74.    Plaintiff and Class members have no adequate remedy at law by virtue of Defendant's conduct.

75.    Plaintiff and the members of the Classes conferred a benefit on Defendant, of which benefit Defendant had knowledge.  By its wrongful acts and omissions described herein, including selling the Washing Machines, Defendant was unjustly enriched at the expense of Plaintiff and the members of the Classes.

76.    Plaintiff's detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

77.    It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Washing Machines.

78.    Plaintiff and the members of the Classes seek restitution from Defendant and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct and establishment of a constructive trust from which Plaintiff and Class members may seek restitution.

## FOURTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

79.    Plaintiff hereby incorporates by reference the allegations contained in all paragraphs 1-51 of this Complaint as though set forth fully herein

80.    At all times, Defendant, Defendant, expressly warranted to the Plaintiff and the Class, that the washing machines were free from defects which would cause the product to fail during normal use.  Attached hereto as Exhibit "A" is a copy of the warranty.

81.     The Defendant breached its express warranty to the Plaintiff and the Class by selling the Washing Machines which were defective (and failed) when sold to the Plaintiff and each class member in that they contain Design Defects that result in Mold Problems.

82.     When Plaintiff and other members of the Class have contacted Defendant about problems with the Washing Machine and/or Defendant has been put on notice of the Design Defect, but Defendant has failed to provide parts or service which corrected the Design Defect, as required by the warranty.

83.     Defendant's failure to repair or replace the Washing Machine has caused the warranty on the Washing Machines to fail of its essential purpose, and as a result Plaintiff and the Class have and will suffer monetary loss and are entitled to damages flowing from the breach of express warranty.

## **REQUEST FOR RELIEF**

Plaintiff, individually and on behalf of all others similarly situated, prays for judgments against Defendant as follows:

a.     For an order certifying the Classes, under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), and appointing Plaintiff as representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

b.     For all recoverable compensatory, statutory and other damages sustained by Plaintiff and the Classes;

c.     For costs;

d.     For both pre-judgment and post-judgment interest on any amounts awarded;

e.     For appropriate injunctive relief;

22

f.      For payment of attorneys' fees and expert fees as may be allowable under applicable law; and

g.      For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury.

Respectfully Submitted,

_____

EDWARD H. ZEBERSKY, ESQ.
Fla. Bar No. 0908370
ZEBERSKY & PAYNE, LLP
4000 Hollywood Blvd., Suite 675-S
Hollywood, FL 33021
Telephone:     (954) 989-6333
Facsimile:      (954) 989-7781
*ezebersky@zpllp.com*

George K. Lang
Julie D. Miller
**FREED & WEISS LLC**
111 West Washington Street, Suite 1331
Chicago, IL 60602
Telephone: (312) 220-0000

Jonathan D. Selbin
**LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500

23

Richard J. Burke
**RICHARD J. BURKE LLC**
1010 Market Street, Suite 650
St. Louis, Missouri 63101
Phone: (314) 880-7000

Jonathan Shub
**SEEGER WEISS LLP**
1515 Market Street
Philadelphia, PA 19102
Telephone: (215) 564-2300

James C. Shah
Natalie Finkelman
**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**
35 East State Street
Media, PA 19063
Telephone: (610) 891-9880

Steven A. Schwartz
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
Haverford, PA 19041
Telephone: (610) 642-8500

24

Exhibit A

# CLOTHES WASHER WARRANTY

**Full One Year Warranty**

For **one (1) year** from the date of original retail purchase, any part which fails in normal home use will be repaired or replaced free of charge.

**Limited Warranty**

After the first year from date of original retail purchase, through the time periods listed below, the parts designated below which fail in normal home use will be repaired or replaced free of charge for the part itself, with the owner paying all other costs, including labor, mileage and transportation.

**Second Year** – All parts.

**Third through Fifth** – The electronic console control board.

**NOTE:** This warranty does not include the motor control board, which is covered by the second year parts warranty only.

**Third through Tenth** – Drive motor.

**Third through Lifetime** – Stainless steel inner wash basket.

**Additional Limited Warranty Against Rust-Through**

Should an exterior cabinet, including the top and baseframe, rust through during the one year period starting from the date of retail purchase, repair or replacement will be made free of charge. After the first, and through the tenth year, repair or replacement will be made free of charge for the part itself, with the owner paying all other costs, including labor, mileage and transportation.

**Please Note:** This full warranty and the limited warranty apply when the washer is located in the United States or Canada. Washers located elsewhere are covered by the limited warranty only, including parts which fail during the first two years. The specific warranties expressed above are the ONLY warranties provided by the manufacturer. This warranty gives you specific legal rights, and you may also have other rights that vary from state to state.

## To Receive Warranty Service

To locate an authorized service company in your area contact the Maytag dealer from whom your appliance was purchased; or call Maytag Services℠, Maytag Customer Assistance at the number listed below. Should you not receive satisfactory warranty service, please call or write:

> Maytag Services℠
> Attn: CAIR® Center
> P.O. Box 2370
> Cleveland, TN 37320-2370
> **U.S. or Canada (toll-free) 1-888-462-9824**
> **U.S. customers using TTY for deaf, hearing impaired or speech impaired, call 1-800-688-2080.**

When contacting Maytag Services℠, Maytag Customer Assistance about a service problem, please include the following:
   (a) Your name, address and telephone number.
   (b) Model number and serial number (found on the lower center of the door opening) of your appliance.
   (c) Name and address of your dealer and the date the appliance was purchased.
   (d) A clear description of the problem you are having.
   (e) Proof of purchase.

## What is not covered by these warranties:

1. Conditions and damages resulting from any of the following:
   a. Improper installation, delivery or maintenance.
   b. Any repair, modification, alteration or adjustment not authorized by the manufacturer or an authorized servicer.
   c. Misuse, abuse, accidents or unreasonable use.
   d. Incorrect electric current, voltage or supply.
   e. Improper setting of any control.
2. Warranties are void if the original serial numbers have been removed, altered, or cannot be readily determined.
3. Light bulb

4. Products purchased for commercial or industrial use.
5. The cost of service or service call to:
   a. Correct installation errors.
   b. Instruct the user on proper use of the product.
   c. Transport the appliance to the servicer.
6. Consequential or incidental damages sustained by any person as a result of any breach of these warranties.

Some states do not allow the exclusion or limitation of consequential or incidental damages, so the above exclusion may not apply.

User's Guides, service manuals and parts catalogs are available from
Maytag Services℠, Maytag Customer Assistance.

**Maytag • 403 West Fourth Street North • P. O. Box 39 • Newton, Iowa 50208**

JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)    NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

## I. (a) PLAINTIFFS

MARLENE DIJOLS, individually and on behalf of all others similarly situated

**(b)** County of Residence of First Listed Plaintiff    **Broward**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

SEE ATTACHMENT

## DEFENDANTS

WHIRPOOL CORPORATION and MAYTAG CORPORATION

County of Residence of First Listed Defendant    **Benton Harbor, Michigan**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys (If Known)

*09cv61353-WPD/LSS*

**(d)** Check County Where Action Arose:   ☐ MIAMI- DADE   ☐ MONROE   ☑ BROWARD   ☐ PALM BEACH   ☐ MARTIN   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE   HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☑ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☑ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. Security | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | ☐ 900 Appeal of Fee Determination |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Re-filed (see VI below)   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page:)

a) Re-filed Case ☐ YES ☑ NO    b) Related Cases ☐ YES ☑ NO

JUDGE                                              DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

violations of state consumer protection statutes, breach of implied and express warranty and unjust enrichment

LENGTH OF TRIAL via  **5**  days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint:

JURY DEMAND:  ☑ Yes   ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE  8/28/09

FOR OFFICE USE ONLY

AMOUNT  *350.00*    RECEIPT #  *547302*

EDWARD H. ZEBERSKY, ESQ.
Fla. Bar No. 0908370
ZEBERSKY & PAYNE, LLP
4000 Hollywood Blvd., Suite 675-S
Hollywood, FL 33021
Telephone:     (954) 989-6333
Facsimile:     (954) 989-7781
*ezebersky@zpllp.com*

George K. Lang
Julie D. Miller
**FREED & WEISS LLC**
111 West Washington Street, Suite 1331
Chicago, IL 60602
Telephone:  (312) 220-0000


Jonathan D. Selbin
**LIEFF, CABRASER, HEIMANN
  & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone:  (212) 355-9500


Richard J. Burke
**RICHARD J. BURKE LLC**
1010 Market Street, Suite 650
St. Louis, Missouri 63101
Phone: (314) 880-7000


Jonathan Shub
**SEEGER WEISS LLP**
1515 Market Street
Philadelphia, PA 19102
Telephone:  (215) 564-2300

James C. Shah
Natalie Finkelman
**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**
35 East State Street
Media, PA 19063
Telephone:  (610) 891-9880


Steven A. Schwartz
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
Haverford, PA 19041
Telephone:  (610) 642-8500

2